Nathan CLARK, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–00–066 CR.

Court of Appeals of Texas, Beaumont.

Submitted March 16, 2001.

Decided June 13, 2001.

Tracy Davenport, State Counsel for Offenders, Huntsville, for appellant.

Mark Mullin, Special Prosecution Unit, Huntsville, for state.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

PER CURIAM.

A jury found appellant Nathan Clark guilty of assault on a public servant[1] and assessed a punishment of thirteen (13) years confinement in the Texas Department of Criminal Justice—Institutional Division ("TDCJ").

---

**1.** To constitute an assault on a public servant, the actor must (1) intentionally, knowingly, or recklessly cause bodily injury (2) to a person the actor knows is a public servant (3) while the public servant is lawfully discharging an official duty. *See* TEX. PEN.CODE ANN. § 22.01(a)(1),(b)(1) (Vernon Supp.2001).

## BACKGROUND FACTS

Amber Eaves, a correctional officer with TDCJ, investigated a rule infraction by an inmate during her shift on May 12, 1997. She copied down his name—Nathan Clark—and his ID number from his identification card in order to write up a violation on him. Shortly thereafter, Officer Eaves saw the inmate again. When he asked to speak with her, she refused. A few minutes later, Eaves entered the officer's restroom located below the control picket.[2] As she left the restroom, the inmate asked to speak with her a second time; when she refused, he grabbed her by the arm, pulled her back into the restroom, and closed the door. The inmate then put her up against the wall and began hitting her with his fist. During the assault, she tried to protect herself by covering her face and shutting her eyes. Eaves testified that the person she saw committing the rule infraction in his cell was the same person who assaulted her and the person whose ID card she had taken for purposes of writing up the infraction.

Officer Kenneth Watson was stationed in the control picket that day. From that vantage point, he observed Officer Eaves going toward the officers' restroom. After hearing screaming coming from the restroom, Watson phoned the "3 building" desk and requested immediate assistance, since he was not permitted to leave the control picket to offer assistance himself.

Sergeant Folsom was the first to respond to Officer Watson's call for assistance. Once inside the officer's restroom, Folsom observed an inmate fling Eaves

---

**2.** The control picket is a deer-stand-type structure located above the officers' restroom in the "3 building."

into the glass windows. Sergeant Folsom grabbed and struggled with the inmate, who was then restrained, handcuffed, placed on a gurney, and taken to "medical."

## ISSUE ONE—IDENTITY

 Clark contends in issue one that the evidence was insufficient as a matter of law to establish that he was the person who assaulted Officer Eaves.[3] When a defendant contests the identity element of the offense, we are mindful of the following principles of law:

> Identity may be proved by direct or circumstantial evidence. In fact, identity may be proven by inferences. When there is no direct evidence of the perpetrator's identity elicited from trial witnesses, no formalized procedure is required for the State to prove the identity of the accused. Proof by circumstantial evidence is not subject to a more rigorous standard than is proof by direct evidence. For the purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative.

*Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (citations omitted). Here, the evidence that Clark was the one who assaulted Eaves is circumstantial.

Clark points out that Officer Eaves was unable to identify him as the man who assaulted her. Eaves testified that during the attack she closed her eyes and covered her face as she attempted to shield herself from the blows. As a result, she could not identify Clark as the man who assaulted her. However, she did indicate she saw an inmate standing at the restroom door when she opened it to go in; this was the same inmate whom she had earlier observed committing an infraction and whose name she had copied off his ID card as Nathan Clark.

During his testimony, the State showed Watson State's Exhibit 10, a photo of an inmate lying stomach-down on the floor, with his face turned to the left side. When asked if the person in the photo was in the courtroom, Officer Watson expressly identified the defendant as the man in the picture. However, Watson could not identify the person in the photo as the man who assaulted Eaves in the restroom, since he could not see inside the restroom from his vantage point in the control picket.

In describing the aftermath of the assault, Folsom testified he stood and watched the inmate lying on the floor; Folsom stated he saw the inmate's face, as depicted in State's Exhibit 10, at the time the photo was taken. Folsom confirmed the inmate in the picture (Exhibit 10) was the one he had seen assaulting Eaves.

 Even though no eyewitness to the crime could identify Clark as the perpetrator, if other evidence shows that he was the perpetrator, the failure of the victim to make a positive in-court identification does not make the verdict improper. *See Conyers v. State*, 864 S.W.2d 739, 740 (Tex. App.—Houston [14th Dist.] 1993, pet.

---

**3.** We review a legal sufficiency challenge by considering all of the evidence in the light most favorable to the verdict; we then determine whether any rational trier of fact could have found the essential elements of the offense, in this case the identity element, beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State*, 23 S.W.3d 1, 7

(Tex.Crim.App.2000). In reviewing the evidence, we are mindful that the jury judges the weight and credibility of the evidence and resolves conflicts in the evidence. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim. App.2000). The jury also may draw reasonable inferences from basic facts to ultimate facts. *See Lacour v. State*, 8 S.W.3d 670, 671 (Tex.Crim.App.2000).

ref'd). It is the other evidence, when coupled with Eaves' testimony, that establishes the identity element beyond a reasonable doubt. In short, Officer Folsom testified the man who assaulted Eaves was the man in the photograph, and Officer Watson identified the person in the photograph as the defendant in the courtroom and stated that the person in the photo was the same person taken by prison personnel from the scene of the assault on a gurney. Thus, the jury could have inferred the element of identity, i.e., that Clark was the one who committed the assault. Furthermore, the members of the jury were able to view the picture and the defendant themselves and determine whether the two were one and the same. Weighing the evidence and credibility of the witnesses, the jury made that determination and found Clark guilty of the offense. We overrule issue one.

### ISSUE TWO—JURY TRIAL ON COMPETENCY

In issue two, Clark contends the jury finding that he was competent to stand trial was so against the great weight and preponderance of the evidence as to be manifestly unjust. We disagree.

■■■ An accused is presumed competent to stand trial unless he can prove his incompetence by a preponderance of the evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 46.02(1A)(b) (Vernon Supp.2001). The test for legal competence is whether the defendant has (1) a sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and (2) has a rational as well as factual understanding of the proceedings against him. *See id.* at art. 46.02(1A)(a); *see also Loftin v. State,* 660 S.W.2d 543, 545–46 (Tex.Crim.App.1983). When a separate jury is empaneled to decide the accused's competency, the jury makes its determination based upon a preponderance of the

evidence standard. *See Rice v. State,* 991 S.W.2d 953, 956 (Tex.App.—Fort Worth 1999, pet. ref'd). The standard for reviewing the jury's finding of competence is whether, considering all the evidence relevant to the issue, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Meraz v. State,* 785 S.W.2d 146, 155 (Tex.Crim.App.1990).

■■■ At the competency hearing on July 1, 1999, the jury had before it the following evidence relating to Clark's competency:

(A) Dr. Massey's detailed testimony as to why he concluded Clark was not competent to stand trial, along with his acknowledgment that there was a real possibility that Clark was malingering to escape the consequences of his action.

(B) Dr. Tchokoev's testimony that Clark was competent to stand trial and his opinion that Clark, in effect, was like those who "assimilat[e] a mental condition for secondary benefits."

(C) Clark's testimony;

(D) Medical records showing the belief by some of the health professionals who treated Clark that he was manipulating his behavior to get what he wanted—**including records quoting Clark as admitting to engaging in bizarre behavior in order to obtain a transfer from the unit he was in.**

The jury judges the credibility of witnesses and the weight to be given their testimony, and it is within the exclusive province of the jury to reconcile conflicts in the evidence. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App.2000). In closing argument to the jury, Clark's attorney bluntly framed the issue for them to decide: "Is he faking?" After hearing Clark's testimony and that of the two experts, the jury reasonably could have de-

termined Clark was competent to stand trial. We conclude the jury's finding of competency is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Clark's second issue is overruled.

### ISSUE THREE—A SECOND COMPETENCY HEARING?

In issue three Clark contends the trial judge abused his discretion in failing to empanel another jury to determine his competency after the pre-trial hearing on November 29, 1999. He claims there was sufficient evidence before the court at that hearing[4] to warrant such an action.

Chapter 46 of the Code of Criminal Procedure governs competency to stand trial issues; Article 46.02(2), set out below, explains how the issue of competency is raised.

> Sec. 2 (a) The issue of the defendant's incompetency to stand trial shall be determined in advance of the trial on the merits if the court determines there is evidence to support a finding of incompetency to stand trial on its own motion or on written motion by the defendant or his counsel filed prior to the date set for trial on the merits asserting that the defendant is incompetent to stand trial.
>
> (b) If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial.

TEX.CODE CRIM. PROC. ANN. art. 46.02(2) (Vernon 1979). Since appellant did not file

another written pre-trial motion claiming incompetency, he must rely on the contention that the trial judge should have *sua sponte* determined the need for a separate competency hearing after observing Clark's conduct at the pre-trial hearing.

Courts have held that a prior verdict of competency to stand trial is not *res judicata* on that issue; should new evidence relevant to the defendant's competency be shown, a new jury trial on competency may be warranted. *See Miles v. State*, 688 S.W.2d 219, 224 (Tex.App.—El Paso 1985, pet. ref'd); *see also Thornhill v. State*, 910 S.W.2d 653, 654–55 (Tex.App.—Fort Worth 1995, pet. ref'd).

Testimony was offered at the November 29, 1999, pre-trial hearing from Officer Zorn, who had transported Clark from Huntsville to Livingston for the hearing. He described how Clark refused to get dressed that morning and had to be dressed by officers; he also indicated Clark was spitting on officers and would not respond to questions. In spite of Clark's behavior, Officer Zorn testified he thought Clark understood what he (Zorn) was saying. At the hearing, the prosecutor noted for the record that Clark was sitting in the courtroom with a mask on his face because of the spitting.

During the course of the hearing, Clark repeatedly interrupted the trial judge, the attorneys, and witnesses with nonsensical remarks. In addition, he kept repeating that he wanted to return to Skyview, a psychiatric unit at Rusk State Hospital where he had been a patient at one time. Among other things, Clark told the trial judge he did not want to be in court and had no right to be there; that he had no

---

4. The hearing was not the result of a motion to determine competency; none was filed after the determination by a jury that Clark was competent to stand trial. According to the trial judge, the purpose of the hearing was to determine whether Clark would be allowed to remain in the courtroom during trial in view of his disruptive behavior (spitting on officers).

case or lawsuit pending; and that he did not have an attorney. Although the trial judge, the prosecutor, and Clark's attorney attempted to get him to focus on the issue of his conduct in the courtroom, he refused to answer questions on the matter and instead kept repeating he wanted to go to Skyview. With the State's agreement, defense counsel urged Clark to try the case in front of the judge rather than a jury. However, Clark would not respond to his entreaties. Clark did respond to questions asked him by the trial judge. A sample interchange is set out below:

THE COURT: Have you been there [Skyview] before?

DEFENDANT: Yes, sir.

THE COURT: How long were you there?

DEFENDANT: I've been there for a couple of weeks. They discharged me.

THE COURT: From the Skyview?

DEFENDANT: Yes, sir.

THE COURT: Why did they discharge you?

DEFENDANT: I don't remember. I got into a fight with a white boy.

Clark's recurring refrain throughout the hearing was "I want to go Skyview."

On appeal, Clark maintains his conduct demonstrates he was unable to consult with counsel in a meaningful way about his case. After questioning the defendant, the prosecutor stated he believed that Clark sufficiently understood what was occurring and could assist counsel in his own defense; the State then asked the court to make a determination about competency and proceed to trial. Defense counsel also requested that the court make a competency determination. The trial judge stated Clark was competent, and trial commenced the next day.

■■■■ A trial court is not required to conduct a separate competency hearing unless the evidence is sufficient to create a *bona fide* doubt in the mind of the judge as to whether the defendant meets the test of legal competence. *Moore v. State,* 999 S.W.2d 385, 393 (Tex.Crim.App.1999) (citing *Ex parte Thomas,* 906 S.W.2d 22, 25 (Tex.Crim.App.1995)). "Evidence capable of creating a bona fide doubt about a defendant's competency may come from the trial court's own observations, known facts, evidence presented, motions, affidavits, or any other claim or credible source." *Brown v. State,* 960 S.W.2d 772, 774 (Tex. App.—Dallas 1997, pet. ref'd) (footnote omitted). A *bona fide* doubt is raised only if evidence indicates recent severe mental illness, at least moderate mental retardation, or truly bizarre acts by the defendant. *See Collier v. State,* 959 S.W.2d 621, 625 (Tex.Crim.App.1997). We review the trial court's decision under an abuse of discretion standard. *See Rice,* 991 S.W.2d at 956–57. If a *bona fide* doubt is raised, a competency hearing is then held to determine whether the issue should be submitted to a jury. *See id.* at 956. If **any** evidence of incompetency is presented during the hearing, regardless of contrary evidence, the court must empanel a separate jury to decide the accused's competency. *Id.*

■■■■ At issue in this case is what effect the prior adjudication of Clark's competency has upon his contention that the trial judge had a duty to *sua sponte* hold a competency hearing and empanel another jury to make a second competency determination. Certainly, a jury's prior competency finding, though not *res judicata* on the issue, is one of the "known facts" the trial court may consider. Contained in the record was a judgment of competency reciting that the jury, having heard "competent medical or psychiatric testimony," found Clark competent to stand trial.

Clearly, Clark's conduct at the November 1999 pre-trial hearing was bizarre, but, as noted above, this was not the first test of his competency. To be entitled to a second competency trial before a jury, there must be new evidence indicating a change in mental condition from the previous finding. *See Miles*, 688 S.W.2d at 224 (To complain of a denial of a second competency hearing, appellant must present some evidence of a subsequent change in competency or some new evidence in a manner analogous to newly discovered evidence in a motion for new trial.); *see also O'Neil v. State*, 642 S.W.2d 259, 262 (Tex. App.—Houston [14th Dist.] 1982, no pet.) (After the first competency hearing, appellant again raised the issue of competency, but presented no new evidence; appellate court found the evidence was, therefore, insufficient to warrant another competency hearing or the empaneling of a jury on the issue.).

*Thornhill v. State,* is a similar, yet distinguishable case. *See* 910 S.W.2d at 654–55. In September 1994, Thornhill had been found competent to stand trial in an unrelated case in another county. In January 1995 in the case cited therein, the trial court held a hearing on Thornhill's motion for a jury trial on competency and denied his motion. As in the instant case, the issue of incompetency in *Thornhill* came up several months after the original finding of competency. *Id.* Unlike *Thornhill*, however, the competency issues here arose in the same case. Although the Fort Worth Court agreed that generally a defendant should not be given a "second bite at the same apple," a second trial on competency was required there because Thornhill presented new evidence relating to his incompetency that was not available at the first hearing in the other case. *Id.* at 655.

Here, Clark did not file another written pre-trial motion asserting that he was incompetent to stand trial and did not offer any new evidence of a change in his mental state; therefore, he was entitled to a new hearing on competency only if the trial judge had a *bona fide* doubt as to Clark's continuing competency to stand trial. On the day of the pre-trial hearing, the trial judge had before him the prior judgment of competency, the defendant Clark, and Clark's bizarre behavior. At various times during the hearing, Clark did not appear to be able to consult with his own attorney; yet when directly questioned by the trial judge, Clark answered lucidly and coherently. He stated he had been to Skyview a couple of weeks and had been discharged after getting in a fight. On another occasion, when the trial judge again addressed Clark directly and asked him if he wanted to stay here, Clark responded, "I don't. I want to go to Skyview. I need it." In spite of Clark's bizarre behavior, the trial judge could have determined Clark's conduct was goal-oriented toward avoiding a trial. In short, there was no new evidence indicating he was not faking his behavior to avoid trial. Since there was no new evidence presented at the November 29, 1999, pre-trial hearing indicating recent severe mental illness or any **change** in his mental condition, we conclude the trial judge did not abuse his discretion in failing to hold a separate hearing on the compentency issue or to empanel a jury for a second competency trial. *See Thornhill*, 910 S.W.2d at 654–55; *Miles*, 688 S.W.2d at 224.

### ISSUE FOUR—DUE PROCESS RIGHTS

The gist of Clark's argument in issue four is that he was incompetent to stand trial, as demonstrated by his conduct, his appearance, his inability to communicate with and assist trial counsel, and his lack of understanding of the proceedings

against him; therefore, his due process rights were violated. We disagree. Like the court in *Burks v. State,* 792 S.W.2d 835, 840 (Tex.App.—Houston [1st Dist.] 1990, pet ref'd), we reject the contention that evidence of appellant's disruptive and unruly behavior, his failure to communicate or cooperate with his attorney, and his general failure to cooperate are probative of incompetence to stand trial in this case. Having already been found competent to stand trial by a jury, the burden shifted to Clark to come forward with new evidence of a change in his mental condition. Otherwise, he could effectively avoid criminal justice altogether by conducting himself in such a fashion whenever he was put to trial. Appellant did not request during trial that a jury be empaneled to resolve the issue of incompetence and can hardly be heard to complain on appeal that the trial court did not order one *sua sponte* when presented with no new evidence. We conclude Clark's due process rights were not violated. Issue four is overruled. The judgment of conviction is affirmed.

AFFIRMED.