NO. 07-02-0397-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



AUGUST 19, 2003



______________________________




SHONQUE R. LUKE, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 44,528-E; HONORABLE ABE LOPEZ, JUDGE



_______________________________



Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)

MEMORANDUM OPINION


 After appellant Shonque R. Luke's plea of not guilty to the offense of assault on a
public servant, a jury convicted him and, following his true plea to the enhancement
paragraph included in the indictment, assessed as punishment a sentence of confinement
for 20 years. By a single point of error, appellant alleges "the trial court erred in failing to
conduct a competency inquiry to determine whether a competency hearing before a jury
must be held to determine whether appellant was competent to stand trial." Based upon
the rationale expressed herein, we affirm. 

 While imprisoned on a murder conviction at the Clements Unit in Amarillo, Texas,
appellant assaulted correctional officer Manuel Mendoza by striking him in the face with
a closed fist. At the time of the assault, appellant was enrolled in the PAMIO (Program for
Aggressively Mentally Ill Offenders) program at the unit. After appellant was indicted, in
the spring of 2002, he filed a Faretta (2) motion indicating a desire to represent himself. 
Around the same time, he filed a pro se "Motion to Quash Indictment" claiming his personal
sovereign immunity barred any prosecution against him. 

 The trial court entertained appellant's Faretta motion at a hearing on June 24, 2002. 
At the hearing, the court and appellant engaged, in pertinent part, in the following colloquy:

 The Court: Now, have you ever been treated mentally, for any type of
mental illness, or have you ever been institutionalized in some
kind of mental ward or anything of that nature?

 Defendant: I've been evaluated.

 The Court: And can you tell me what the results of that evaluation were? 

 Defendant: Normal.

 The Court: Normal? Was there some type of uh - competency exam, or
anything of that nature done in this alleged - in this homicide
that occurred back in Tarrant County?

 Defendant: Yes, there was. And I was competent. 

 The Court: You were found competent or incompetent? 

 Defendant: I was found competent.

 The Court: Competent. Okay. So, do you have uh - a rational
understanding of the nature of the proceedings that are
pending against you? Do you understand what you're accused
of, in other words?

 Defendant: Yes, I do.

 The Court: Okay. Again, you may disagree with the charges. Of course,
you have that absolute right to do so, but I need to know that
have an understanding of what it is that you're accused of, and
uh - so that you can properly defend yourself. So, you're
telling me that you've never been institutionalized in any type
of mental institution or anything of that nature. Is that correct?

 Defendant: Not confined, no.

 The Court: Have you ever been treated by a mental health professional?

 Defendant: Yes, I have.

 The Court: For what?

 Defendant: Aggression.

 The Court: Aggression? Did you talk to a psychologist, or a psychiatrists
(sic) or do you know?

 Defendant: All of them.

 The Court: How many individuals - how many mental health professionals
have you - have you had - have treated you or have you
consulted with?

 Defendant: I can't say over the course of my whole life. I was just in the
Bill Clements PAMIO Program. Psyches running unit uh -
assistance of that building, but uh - it's for aggressive
offenders. 

 The Court: Okay.

 Defendant: That's why I have seen psychs all of my life for aggression,
violence.

 The Court: And that's all?

 Defendant: Yes, sir.

 The Court: So you're telling me --

 Defendant: Just evaluated before.

 The Court: - are you telling me that you do not have any kind of mental
problem at this time?

 Defendant: I mean, no psych seems to think so. I don't think so.

 * * *


 The Court: Okay. Mr. Ray [defense counsel], do you find any evidence of
him having some type of - mental problems, other than --

 Mr. Ray: Other than staying at the PAMIO Unit. Like he says, it's for
aggressive offenders. Have you ever been to the John T.
Montford Unit, in Lubbock?

 Defendant: Yes, I was at the hospital at John T. Montford for kidney
surgery.

 Mr. Ray: Okay. No psychological evaluation at John T. Montford?

 Defendant: I was never admitted to psych, sir. I was at the hospital. (3) 

Satisfied appellant understood the pitfalls of self-representation and voluntarily, knowingly
and intelligently waived his right to counsel, the trial court granted his Faretta motion and
appointed Ray as stand-by counsel. It is clear from the record that Ray was present at
each of the subsequent proceedings and that appellant consulted with him on numerous
occasions.

 On the morning of trial, the court conducted a hearing on appellant's motion to
quash the indictment. At the hearing, the court queried whether appellant still desired to
represent himself. After appellant responded affirmatively, the trial court entertained
evidence on the motion to quash. Appellant argued the indictment should be quashed
because neither the court nor the United States military flag displayed in the courtroom
held jurisdiction over him as a sovereign. Unpersuaded by appellant's assertions, the court
denied the motion and commenced voir dire. 

 During voir dire, appellant examined prospective jurors on issues of self-defense 
and explained his sovereign immunity defensive theory. He told jurors, "[a] sovereign is
a person, a body or a state invested within its independent supreme authority," and defined
sovereign immunity as "the actual independent right to keep someone from prosecuting
you regardless of what the offense is." Appellant committed several jurors to listening to
both sides of the story and to remaining open to his defensive theories. At the conclusion
of questioning, appellant consulted Ray, with whom he exercised his peremptory
challenges. 

 Appellant argued, during the course of his opening statement, that he was the victim
of officer brutality at the unit. In that regard, he asked the jury to consider his size in
relation to the officers who would testify at trial. Finally, appellant explained, "as far as my
sovereign immunity goes, I've got paperwork on all of that, the flag and everything. Actual
photograph to show you, huh, that I'm not just standing up here telling you some dream
or some theory." 

 During his cross-examination of the State's witnesses, appellant focused on self-defense issues. He stressed the weight differences between himself and the testifying
officers. Additionally, appellant emphasized the officers' use of a "bean tool" (4) as a weapon
against him, an unarmed inmate. Appellant questioned whether the officers exercised
excessive force in subduing him on the date of the offense in retribution for an incident
involving him and other officers the day before. Finally, appellant was successful in
obtaining an admission from one of the State's witnesses that certain objects in the cell
block obstructed her view of the events leading up to the assault. 

 Appellant called three witnesses to testify on his behalf. One witness, another
officer at the Clements Unit, testified she remembered escorting appellant to the infirmary
a few times. When asked whether she "was present to assaults in the past against
[appellant]," the officer responded "[c]orrect." Appellant also presented two inmates who
minimized appellant's actions during the assault and claimed the responding officer used 
excessive force in subduing him. In closing arguments, appellant reiterated his sovereign
immunity defense and quoted from the Fourteenth Amendment to the United States
Constitution. 

 By his sole point of error, appellant claims the trial court abused its discretion in not
conducting, sua sponte, a competency inquiry under section 2(b) of article 46.02 of the
Code of Criminal Procedure. Specifically, appellant claims his bizarre defensive theories
and the fact he participated in the PAMIO program at the Clements Unit should have
created a bona fide doubt in the mind of the trial court. We disagree.

 A person is presumed to be competent to stand trial unless proven incompetent. 
Tex. Code. Crim. Proc. Ann art. 46.02, § 1A(b) (Vernon Supp. 2003). A person is
incompetent to stand trial if that person lacks "sufficient present ability to consult with [that]
person's lawyer with a reasonable degree of rational understanding; or . . . [if that person
lacks] a rational as well as factual understanding of the proceedings against [that] person." 
Art. 46.02, § 1A(a). If evidence of the defendant's incompetence is brought to the court's
attention from any source, the court must conduct a hearing out of the presence of the jury
to determine whether there is evidence to support a finding of incompetency to stand trial. 
Art. 46.02, § 2(b) (Vernon 1979). 

 A section 2 hearing, a competency inquiry, is required only if the evidence brought
to the trial court's attention is such as to raise a bona fide doubt in the court's mind as to
the defendant's competency to stand trial. Alcott v. State, 51 S.W.3d 596, 601
(Tex.Cr.App. 2001), cert. denied, 525 U.S. 929, 119 S.Ct. 335, 142 L.Ed.2d 272 (1998). 
In general, a bona fide doubt is raised only if the evidence indicates recent severe mental
illness, at least moderate mental retardation, or truly bizarre acts by the defendant. Collier
v. State, 959 S.W.2d 621, 625 (Tex.Cr.App. 1997). The naked assertion, "I am
incompetent," unsupported by any facts or evidence, is not sufficient, by itself, to require
either a competency inquiry under section 2 or a jury competency hearing under section
4. McDaniel v. State, 98 S.W.3d 704, 711 (Tex.Cr.App. 2003). When a bona fide doubt
does exist, the court must conduct the section 2 competency inquiry to determine whether
there is "some evidence" to support a finding of incompetency and, if so, to commence a
section 4 (5) competency hearing before a jury. Id. at 710. 

 Having reviewed the record, we conclude that a bona fide doubt was not raised
about appellant's competency to stand trial. First, at the Faretta hearing, appellant
steadfastly maintained that the only reason he had been assigned to the PAMIO unit was
for aggression or violence. In response to questioning by the court during that proceeding,
appellant acknowledged he had been tested for competency to stand trial in Tarrant
County when he was tried there for his underlying murder conviction. According to
appellant, however, he was found to be competent. Appellant also denied ever being
institutionalized for any mental disorder and flatly stated, no "psyche" ever found him to 
suffer from mental problems. When Ray asked whether appellant had ever been treated
at the Montford Unit, apparently, a psychiatric and medical facility, appellant explained he
had kidney surgery there, but had never been admitted into the psychiatric portion of the
hospital. Ray never expressed any concern about his client's ability to communicate with
him or to understand the charges against him. As a result, Ray never asked the court to
examine appellant for competency to stand trial. Viewing the record as a whole, we
conclude appellant's participation in the PAMIO program does not rise to the level of a
bona fide doubt as to his competency to stand trial. Cf. Moore v. State, 999 S.W.2d 385,
395 (Tex.Cr.App. 1999), cert denied, 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252
(2000) (prior hospitalization and treatment for depression do not per se warrant the trial
court to conduct a hearing on competence).

 Next, appellant alleges his defensive theories rise to the level of truly bizarre acts
which should have created a bona fide doubt in the mind of the trial court. Initially, we note
that appellant's acts do not rise to the level of the truly bizarre. Cf. Clark v. State, 47
S.W.3d 211, 218 (Tex.App.-Beaumont 2001, no pet.) (appellant's conduct at pretrial
hearing was bizarre); Reed v. State, 14 S.W.3d 438, 442 (Tex.App.-Houston [14th Dist.]
2000, pet. ref'd) (bizarre broad daylight episode, taking a full-length aqua green fur coat
from Sak's and stuffing it in a Lord & Taylor bag, might occasion a serious question of
appellant's competence). Furthermore, while appellant's sovereign immunity and flag
claims were unique, his other defensive theories reflected an understanding of the charges
against him. Appellant appropriately cross-examined the State's witnesses and called his
own to prove up his theory of the case. He understood enough about the proceedings to
mount a reasonable defense and to present the officers' purported motive for retaliating
against him because of an incident involving him the day before. Moreover, through the
testimony of his fellow inmates, appellant attempted to establish his theory that the officers
exercised excessive force against an unarmed inmate. We refuse to view appellant's
unique defensive theories in a vacuum when the totality of the record demonstrates
appellant competently, if not artfully, handled his own defense in this case with the
assistance of his stand-by counsel. McDaniel, 98 S.W.3d at 713. Under these facts, the
trial court did not err in failing to hold a formal competency inquiry. Appellant's sole point
of error is overruled. 

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice



Do not publish.



1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). 
3. We conclude the preceding exchange at a hearing a little less than a month before
trial, in fact, constituted an informal competency inquiry. However, because appellant
claims his defensive theories at trial constituted truly bizarre acts which should have raised
a bona fide doubt about his competency to stand trial, we will address his contentions.
4. We discern from the record that a "bean tool" is a metal instrument used to open
the food tray slot in an inmate's cell door.
5. See Tex. Code Crim. Proc. Ann. art. 46.02, § 4 (Vernon Supp. 2003).


attention. See
Boutwell v. State, 719 S.W.2d 164, 173 (Tex.Crim.App. 1985); Carter v. State, 656 S.W.2d
468, 468-69 (Tex.Crim.App. 1983). Under these circumstances, we have jurisdiction and
authority to review unassigned error. Bigon v. State, ___ S.W.3d ___, Nos. Pd-1768-06,
PD-1770-06, 2008 WL 141929, at *7 (Tex.Crim.App. Jan. 16, 2008); Sanchez v. State, 209
S.W.3d 117, 120 (Tex.Crim.App. 2006). 
          Appellant’s conviction, in the absence of a plea, deprived him of numerous,
fundamental due process rights intended to assure that an accused receives a fair trial. 
As previously noted, Appellant’s waiver of rights was conditional upon a plea of guilty. In
the absence of a plea of guilty there was no waiver of rights. Consequently, as to the
allegations contained in the underlying indictment, Appellant was deprived of his right to
a trial by jury. This is a fundamental right guaranteed by the Sixth and Fourteenth
Amendments to the United States Constitution and by the Texas Constitution. See U.S.
Const. amends. VI, XIV; Tex. Const. art. I, § 15. 
          Neither was his conviction in conformance with the applicable statutory scheme. 
In this State, a person cannot be convicted of a felony “except upon the verdict of a jury
duly rendered and recorded, unless the defendant, upon entering a plea, has in open court
in person waived his right of trial by jury in writing in accordance with articles 1.13 and 1.14
[of the Code of Criminal Procedure].” Tex. Code Crim. Proc. Ann. art. 1.15 (Vernon 2005)
(emphasis added). Here neither occurred–Appellant did not receive a jury trial and he did
not enter a plea in open court. A plea of “guilty” or a plea of “nolo contendere” in a felony
case must be made in open court by the defendant in person and the proceedings must
comport with the requirements of articles 1.13 and 1.15 when the plea is before a judge
alone. Tex. Code Crim. Proc. Ann. art. 27.13 (Vernon 2005). Again, Appellant did not plea
in open court and the trial court failed to follow mandatory statutory procedures. Taking
a plea, guilty or not guilty, is mandatory and, if the defendant refuses to plea, the trial court
must enter a plea of not guilty for the defendant. Tex. Code Crim. Proc. Ann. art. 26.12
(Vernon 1989). The trial court neither received nor entered a plea for Appellant. In short,
Appellant was denied numerous procedural protections, both constitutional and statutory. 
See Mendez v. State, 138 S.W.3d 334, 344 (Tex.Crim.App. 2004). 
          “It is well settled in this state that a plea must be entered in every criminal case and
if no plea is entered, the trial is a nullity since there is no issue for the jury or the court. 
Lumsden v. State, 384 S.W.2d 143, 143-44 (Tex.Crim.App. 1964) (collected cases cited
therein); White v. State, 932 S.W.2d 593, 596-97 (Tex.App.–Tyler 1995, no pet.). Without
a plea, no issue is joined; Johnson v. State, 118 Tex. Crim. 291, 42 S.W.2d 782, 783
(1931); Jefferson v. State, 24 Tex.App. 535, 7 S.W. 244, 245 (1888); Pate v. State, 21
Tex.App. 191, 17 S.W. 461, 462-63 (1886), and a trial would be “absolutely without result.” 
Mays v. State, 51 Tex. Crim. 32, 101 S.W. 233, 234 (1907). Moreover, where there is no
plea, jeopardy has not attached. See Seale v. State, 158 Tex.Crim. 440, 256 S.W.2d 86,
88 (1953); Mays, 101 S.W. at 234; State v. Harkins, 705 S.W.2d 788, 790
(Tex.App.–Dallas 1986, no pet.). If a person has neither pleaded guilty to a crime nor been
tried for the crime, he has not been convicted of the crime. Willis v. State, 389 S.W.2d
464, 464-65 (Tex.Crim.App. 1965); Lumsden, 384 S.W.2d at 144. 
          Here, the record contains no statutory admonishments from the bench or plea in
open court related to the indictment upon which Appellant stands convicted. That
Appellant may have intended to plea to the indictment or the trial court mistakenly thought
a plea had taken place is insufficient to support the conviction. Finding a plea of guilty
where none has occurred violates a myriad of due process rights owing to Appellant in the
absence of a trial. 
          Convicting Appellant without a plea is fundamental error; Jefferson, 7 S.W. at 245, 
or “structural” error representing a “defect affecting the framework within which the trial
proceeds, rather than simply an error in the trial process itself.” Mendez v. State, 138
S.W.3d at 340, quoting, Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113
L.Ed.2d 302 (1991). Thus, the trial court committed fundamental error in violation of
Appellant’s due process rights and issued a judgment that is void. As such, we need not
undertake a harmless error analysis. Mendez, 138 S.W.3d at 339-340; White, 932 S.W.2d
at 597.
          Moreover, the trial court’s judgment is void because the court lacked authority or
power to render the judgment in question in the absence of a plea or jury verdict. See Nix
v. State, 65 S.W.3d 664, 667-68 (Tex.Crim.App. 2001) (“A void judgment is a ‘nullity’ and
can be attacked at any time.”); Lumsden, 384 S.W.2d at 143 (in the absence of a plea in
a criminal case, the trial is a nullity); White, 929 S.W.2d at 505 (conviction void).
          Because the judgment entered in Cause No. 2006-413,890 is a nullity, Appellant’s
issues are pretermitted. 
Conclusion
          The trial court’s judgment is reversed and the cause remanded. 
 
                                                                           Patrick A. Pirtle 

                                                                                Justice 



Do not publish.