NO. 07-02-0397-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

AUGUST 19, 2003

_____

SHONQUE R. LUKE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 44,528-E; HONORABLE ABE LOPEZ, JUDGE

_____

Before QUINN and REAVIS, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

After appellant Shonque R. Luke's plea of not guilty to the offense of assault on a public servant, a jury convicted him and, following his true plea to the enhancement paragraph included in the indictment, assessed as punishment a sentence of confinement

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

for 20 years. By a single point of error, appellant alleges "the trial court erred in failing to conduct a competency inquiry to determine whether a competency hearing before a jury must be held to determine whether appellant was competent to stand trial." Based upon the rationale expressed herein, we affirm.

While imprisoned on a murder conviction at the Clements Unit in Amarillo, Texas, appellant assaulted correctional officer Manuel Mendoza by striking him in the face with a closed fist. At the time of the assault, appellant was enrolled in the PAMIO (Program for Aggressively Mentally Ill Offenders) program at the unit. After appellant was indicted, in the spring of 2002, he filed a *Faretta*[2] motion indicating a desire to represent himself. Around the same time, he filed a *pro se* "Motion to Quash Indictment" claiming his personal sovereign immunity barred any prosecution against him.

The trial court entertained appellant's *Faretta* motion at a hearing on June 24, 2002. At the hearing, the court and appellant engaged, in pertinent part, in the following colloquy:

> The Court: Now, have you ever been treated mentally, for any type of mental illness, or have you ever been institutionalized in some kind of mental ward or anything of that nature?
>
> Defendant: I've been evaluated.
>
> The Court: And can you tell me what the results of that evaluation were?
>
> Defendant: Normal.

---

[2]*See* Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The Court: Normal? Was there some type of uh – competency exam, or anything of that nature done in this alleged – in this homicide that occurred back in Tarrant County?

Defendant: Yes, there was. And I was competent.

The Court: You were found competent or incompetent?

Defendant: I was found competent.

The Court: Competent. Okay. So, do you have uh – a rational understanding of the nature of the proceedings that are pending against you? Do you understand what you're accused of, in other words?

Defendant: Yes, I do.

The Court: Okay. Again, you may disagree with the charges. Of course, you have that absolute right to do so, but I need to know that have an understanding of what it is that you're accused of, and uh – so that you can properly defend yourself. So, you're telling me that you've never been institutionalized in any type of mental institution or anything of that nature. Is that correct?

Defendant: Not confined, no.

The Court: Have you ever been treated by a mental health professional?

Defendant: Yes, I have.

The Court: For what?

Defendant: Aggression.

The Court: Aggression? Did you talk to a psychologist, or a psychiatrists (sic) or do you know?

Defendant: All of them.

The Court: How many individuals – how many mental health professionals have you – have you had – have treated you or have you consulted with?

Defendant: I can't say over the course of my whole life. I was just in the Bill Clements PAMIO Program. Psyches running unit uh – assistance of that building, but uh – it's for aggressive offenders.

The Court: Okay.

3

| | |
|---|---|
| Defendant: | That's why I have seen psychs all of my life for aggression, violence. |
| The Court: | And that's all? |
| Defendant: | Yes, sir. |
| The Court: | So you're telling me -- |
| Defendant: | Just evaluated before. |
| The Court: | – are you telling me that you do not have any kind of mental problem at this time? |
| Defendant: | I mean, no psych seems to think so. I don't think so. |

* * *

| | |
|---|---|
| The Court: | Okay. Mr. Ray [defense counsel], do you find any evidence of him having some type of – mental problems, other than -- |
| Mr. Ray: | Other than staying at the PAMIO Unit. Like he says, it's for aggressive offenders. Have you ever been to the John T. Montford Unit, in Lubbock? |
| Defendant: | Yes, I was at the hospital at John T. Montford for kidney surgery. |
| Mr. Ray: | Okay. No psychological evaluation at John T. Montford? |
| Defendant: | I was never admitted to psych, sir. I was at the hospital.[3] |

Satisfied appellant understood the pitfalls of self-representation and voluntarily, knowingly and intelligently waived his right to counsel, the trial court granted his *Faretta* motion and appointed Ray as stand-by counsel. It is clear from the record that Ray was present at each of the subsequent proceedings and that appellant consulted with him on numerous occasions.

---

[3]We conclude the preceding exchange at a hearing a little less than a month before trial, in fact, constituted an informal competency inquiry. However, because appellant claims his defensive theories *at trial* constituted truly bizarre acts which should have raised a bona fide doubt about his competency to stand trial, we will address his contentions.

4

On the morning of trial, the court conducted a hearing on appellant's motion to quash the indictment. At the hearing, the court queried whether appellant still desired to represent himself. After appellant responded affirmatively, the trial court entertained evidence on the motion to quash. Appellant argued the indictment should be quashed because neither the court nor the United States military flag displayed in the courtroom held jurisdiction over him as a sovereign. Unpersuaded by appellant's assertions, the court denied the motion and commenced voir dire.

During voir dire, appellant examined prospective jurors on issues of self-defense and explained his sovereign immunity defensive theory. He told jurors, "[a] sovereign is a person, a body or a state invested within its independent supreme authority," and defined sovereign immunity as "the actual independent right to keep someone from prosecuting you regardless of what the offense is." Appellant committed several jurors to listening to both sides of the story and to remaining open to his defensive theories. At the conclusion of questioning, appellant consulted Ray, with whom he exercised his peremptory challenges.

Appellant argued, during the course of his opening statement, that he was the victim of officer brutality at the unit. In that regard, he asked the jury to consider his size in relation to the officers who would testify at trial. Finally, appellant explained, "as far as my sovereign immunity goes, I've got paperwork on all of that, the flag and everything. Actual

5

photograph to show you, huh, that I'm not just standing up here telling you some dream or some theory."

During his cross-examination of the State's witnesses, appellant focused on self-defense issues. He stressed the weight differences between himself and the testifying officers. Additionally, appellant emphasized the officers' use of a "bean tool"[4] as a weapon against him, an unarmed inmate. Appellant questioned whether the officers exercised excessive force in subduing him on the date of the offense in retribution for an incident involving him and other officers the day before. Finally, appellant was successful in obtaining an admission from one of the State's witnesses that certain objects in the cell block obstructed her view of the events leading up to the assault.

Appellant called three witnesses to testify on his behalf. One witness, another officer at the Clements Unit, testified she remembered escorting appellant to the infirmary a few times. When asked whether she "was present to assaults in the past against [appellant]," the officer responded "[c]orrect." Appellant also presented two inmates who minimized appellant's actions during the assault and claimed the responding officer used excessive force in subduing him. In closing arguments, appellant reiterated his sovereign immunity defense and quoted from the Fourteenth Amendment to the United States Constitution.

---

[4]We discern from the record that a "bean tool" is a metal instrument used to open the food tray slot in an inmate's cell door.

6

By his sole point of error, appellant claims the trial court abused its discretion in not conducting, *sua sponte*, a competency inquiry under section 2(b) of article 46.02 of the Code of Criminal Procedure. Specifically, appellant claims his bizarre defensive theories and the fact he participated in the PAMIO program at the Clements Unit should have created a bona fide doubt in the mind of the trial court. We disagree.

A person is presumed to be competent to stand trial unless proven incompetent. Tex. Code. Crim. Proc. Ann art. 46.02, § 1A(b) (Vernon Supp. 2003). A person is incompetent to stand trial if that person lacks "sufficient present ability to consult with [that] person's lawyer with a reasonable degree of rational understanding; or . . . [if that person lacks] a rational as well as factual understanding of the proceedings against [that] person." Art. 46.02, § 1A(a). If evidence of the defendant's incompetence is brought to the court's attention from any source, the court must conduct a hearing out of the presence of the jury to determine whether there is evidence to support a finding of incompetency to stand trial. Art. 46.02, § 2(b) (Vernon 1979).

A section 2 hearing, a competency inquiry, is required only if the evidence brought to the trial court's attention is such as to raise a bona fide doubt in the court's mind as to the defendant's competency to stand trial. Alcott v. State, 51 S.W.3d 596, 601 (Tex.Cr.App. 2001), *cert. denied*, 525 U.S. 929, 119 S.Ct. 335, 142 L.Ed.2d 272 (1998). In general, a bona fide doubt is raised only if the evidence indicates recent severe mental illness, at least moderate mental retardation, or truly bizarre acts by the defendant. Collier

7

v. State, 959 S.W.2d 621, 625 (Tex.Cr.App. 1997).   The naked assertion, "I am incompetent," unsupported by any facts or evidence, is not sufficient, by itself, to require either a competency inquiry under section 2 or a jury competency hearing under section 4.  McDaniel v. State, 98 S.W.3d 704, 711 (Tex.Cr.App. 2003).  When a bona fide doubt does exist, the court must conduct the section 2 competency inquiry to determine whether there is "some evidence" to support a finding of incompetency and, if so, to commence a section 4[5] competency hearing before a jury.  *Id.* at 710.

Having reviewed the record, we conclude that a bona fide doubt was not raised about appellant's competency to stand trial.  First, at the *Faretta* hearing, appellant steadfastly maintained that the only reason he had been assigned to the PAMIO unit was for aggression or violence.  In response to questioning by the court during that proceeding, appellant acknowledged he had been tested for competency to stand trial in Tarrant County when he was tried there for his underlying murder conviction.  According to appellant, however, he was found to be competent.  Appellant also denied ever being institutionalized for any mental disorder and flatly stated, no "psyche" ever found him to suffer from mental problems.  When Ray asked whether appellant had ever been treated at the Montford Unit, apparently, a psychiatric and medical facility, appellant explained he had kidney surgery there, but had never been admitted into the psychiatric portion of the hospital.  Ray never expressed any concern about his client's ability to communicate with

---

[5]*See* Tex. Code Crim. Proc. Ann. art. 46.02, § 4 (Vernon Supp. 2003).

8

him or to understand the charges against him. As a result, Ray never asked the court to examine appellant for competency to stand trial. Viewing the record as a whole, we conclude appellant's participation in the PAMIO program does not rise to the level of a bona fide doubt as to his competency to stand trial. *Cf.* Moore v. State, 999 S.W.2d 385, 395 (Tex.Cr.App. 1999), *cert denied*, 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000) (prior hospitalization and treatment for depression do not *per se* warrant the trial court to conduct a hearing on competence).

Next, appellant alleges his defensive theories rise to the level of truly bizarre acts which should have created a bona fide doubt in the mind of the trial court. Initially, we note that appellant's acts do not rise to the level of the truly bizarre. *Cf.* Clark v. State, 47 S.W.3d 211, 218 (Tex.App.–Beaumont 2001, no pet.) (appellant's conduct at pretrial hearing was bizarre); Reed v. State, 14 S.W.3d 438, 442 (Tex.App.–Houston [14th Dist.] 2000, pet. ref'd) (bizarre broad daylight episode, taking a full-length aqua green fur coat from Sak's and stuffing it in a Lord & Taylor bag, might occasion a serious question of appellant's competence). Furthermore, while appellant's sovereign immunity and flag claims were unique, his other defensive theories reflected an understanding of the charges against him. Appellant appropriately cross-examined the State's witnesses and called his own to prove up his theory of the case. He understood enough about the proceedings to mount a reasonable defense and to present the officers' purported motive for retaliating against him because of an incident involving him the day before. Moreover, through the testimony of his fellow inmates, appellant attempted to establish his theory that the officers

9

exercised excessive force against an unarmed inmate. We refuse to view appellant's unique defensive theories in a vacuum when the totality of the record demonstrates appellant competently, if not artfully, handled his own defense in this case with the assistance of his stand-by counsel. *McDaniel*, 98 S.W.3d at 713. Under these facts, the trial court did not err in failing to hold a formal competency inquiry. Appellant's sole point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.