# NO. 12-12-00118-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAMARIOS LECHRISTOPHER CANTON,* *APPELLANT* | § | *APPEAL FROM THE 145TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Jamarios LeChristopher Canton appeals his conviction for aggravated assault with a deadly weapon. In his sole issue on appeal, he alleges that the evidence is legally and factually insufficient to support the jury's guilty verdict. We affirm.

### BACKGROUND

On January 10, 2012, in the early morning hours, the Nacogdoches Police Department (NPD) received a 911 call from a woman who said that she had been stabbed and that the assault occurred in the 1000 block of First Street in Nacogdoches, Texas. Several officers from NPD, including Corporal Charles Cain, responded and located a woman on the ground lying in a pool of blood. The victim, Tone Curl, appeared to be fading in and out of consciousness. When asked who had "done this," she responded with the name "Chris." Police located the handle to a knife on the ground near the victim. After the victim was rolled over, the police found the blade to the knife underneath where she had been laying.

During the investigation, Corporal Cain received information from Appellant's mother, saying that he was in a nearby housing project and that, according to Corporal Cain, Appellant said

he was "waiting there for officers to come and kill him, basically." From a separate caller, NPD received information that Appellant was obtaining a ride back to the scene. When Appellant arrived, they noticed that he appeared to be under the influence of a narcotic, that he was aggressive, and that he was unable to answer any questions. The officers visually observed that Appellant's clothes and shoes were covered in blood, and that his hands were "caked" in blood, but that he did not appear to have any wounds himself. Since he was not cooperative, could not answer questions, and did not appear to understand his rights as they were read to him, the police arrested him based on their observations. While the police were making the arrest, Appellant voluntarily said to the officers, "Made me do it." Appellant was later charged and indicted for the offense, which was enhanced due to a prior offense he had committed.

Darren Martin is a twenty-three year old family friend of Appellant and his mother who often stayed overnight at the home. Martin testified that he and Appellant were at the home of Appellant's mother on the night of the assault. Curl, an acquaintance of Appellant's mother, went to the home to discuss whether Appellant's mother knew the whereabouts of the mother's sister, who was Curl's close friend.[1] Martin told Curl that Appellant's mother was not home and he thought Curl left. Martin testified that Appellant was no longer in the living room at that point, but that he believed he was still inside the home. Martin went to another room, and when he came back, he could see, through the screen door, that Appellant was outside sitting or standing next to the victim as she lay moaning on the ground. Martin stated that he was scared and in shock. Appellant entered the home, grabbed Martin, and held him on his lap, saying that he "wasn't going to go down for this, like, by his self."

Martin's uncle, Cory Flemon, who also knew Appellant, testified that he happened to be driving by the scene when he saw Appellant making stabbing motions, and kicking and stomping on something. Flemon testified that Appellant looked up, saw him, and then ran into the home. Flemon, who was concerned for his nephew's safety, exited the car and gave chase. He entered just as Appellant indicated that he would not be "going down" for this by himself. Flemon grabbed Martin, and told him to leave and call 911. Martin left to find Appellant's mother, but never called 911. Flemon also left, but did not call 911 because he was afraid that he would be falsely accused of the crime due to his own criminal history. Although she did not know

---

[1] Curl testified that she had never met Appellant.

2

Appellant, the victim testified that as she was being attacked, she learned the name of her assailant because she heard the person later identified as Martin saying, "Stop it, Chris.  Stop it."  A Texas Department of Public Safety (DPS) DNA analyst testified that she tested blood samples found on Appellant's clothes and shoes, which showed that the blood belonged to Curl.

The jury found Appellant guilty of the offense, and the enhancement to be true, and assessed a sentence of imprisonment for life.  This appeal followed.

**SUFFICIENCY OF THE EVIDENCE**

In his sole issue, Appellant argues that the evidence is insufficient to support the jury's guilty verdict because the State failed to prove that he was the perpetrator of the assault on Curl.[2]

**Standard of Review**

Under the single sufficiency standard, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *see also* ***Brooks v. State***, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).  We defer to the trier of fact's responsibility to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from basic facts to ultimate facts.  *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.  "A court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution . . . ."  *Id.*, 443 U.S. at 326, 99 S. Ct. at 2793.  Appellate courts do not reevaluate the weight and credibility of the evidence; they only ensure that the jury reached a rational decision.  *Laster v. State*, 265 S.W.3d 512, 517 (Tex. Crim. App. 2009).

Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  Circumstantial evidence is as

---

[2] Appellant invokes both legal and factual sufficiency review of the evidence.  The Texas Court of Criminal Appeals has held that the legal sufficiency standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d (1979), is the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (plurality op.).  We will review the evidence under the *Jackson* standard.

probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.*

**Applicable Law**

A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a) (West 2011). The state is required to prove beyond a reasonable doubt that the accused is the person who committed the crime charged. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984). The identity of a perpetrator in an assault case may be proven by either direct or circumstantial evidence. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (en banc). The jury may use its common knowledge and experience to make inferences in determining whether the evidence establishes the defendant as the perpetrator of the alleged crime. *See Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) ("[I]dentity may be proven by inferences."); *Clark v. State*, 47 S.W.3d 211, 214 (Tex. App.—Beaumont 2001, no pet.) (same) *Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, writ ref'd) (explaining that the jury may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life when giving effect to inferences that may reasonably be drawn from evidence). It is up to the fact finder to decide which inference is most reasonable. *Laster*, 275 S.W.3d at 523; *Hooper*, 214 S.W.3d at 14.

"When there is no direct evidence of the perpetrator's identity elicited from trial witnesses, no formalized procedure is required for the State to prove the identity of the accused." *Clark*, 47 S.W.3d at 214. Moreover, circumstantial evidence is not subject to a more rigorous standard of review than direct evidence, and "[f]or purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative." *Id.*

**Discussion**

Appellant argues that the victim never specifically identified him as her assailant, and that there were other men named "Chris" who could have been the assailant but were never investigated. He also contends that Martin's testimony is inconsistent with the victim's testimony and should be discredited. Moreover, he argues that Martin and Flemon behaved suspiciously by fleeing the scene and failing to call 911.

4

First, the victim is not required to make a positive identification of the defendant as the perpetrator of the alleged offense so long as other direct or circumstantial evidence of his identity exists. *See* **Gardner v. State**, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009) (noting that eyewitness testimony implicating the defendant is not necessarily required to support a conviction).

Next, Detective Scott Weems testified that the police had been made aware of other individuals named Chris who were associated with the house, but the police remained focused on Appellant, and never investigated the information. This was because Appellant, who went by the name of "Chris," arrived at the scene with blood all over him, acting aggressively, and said, "Made me do it." Additionally, Detective Weems testified that Martin never mentioned Cory Flemon's presence at the scene that night to law enforcement. Moreover, no blood was discovered on Martin or on any of the furniture inside the residence, even though Appellant went back inside the home after the attack. Appellant contends that since there was blood on his clothes, shoes, and hands, there should have been a transfer pattern inside the home or on the couch where he held Martin. Appellant infers from the absence of blood, coupled with their failure to call 911, that Martin and Flemon must not be telling the truth. Appellant contends that the blood evidence was just as consistent with the theory that he attempted to aid the victim, and that the person saying "Stop it, Chris," was the actual assailant, who said those words to Appellant as he tried to help the victim. As we have stated, it is for the jury to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the evidence. **Jackson**, 443 U.S. at 319, 99 S. Ct. at 2789. Therefore, it was for the jury to decide whether Martin's and Flemon's testimony was credible, whether they took part in the assault, and what weight should be attributed to the police's alleged failure to investigate other individuals named Chris who may have had a connection to the assault.

Viewing the evidence in the light most favorable to the jury's verdict, the evidence shows that Appellant returned to the scene shortly after police arrived. His clothes were covered in Curl's blood. The victim stated that she overheard Martin say that a man named "Chris" was her assailant. Appellant goes by the name of "Chris." While detained by police, Appellant, who appeared to be under the influence of narcotics, said, "Made me do it." Martin and Flemon both testified that Appellant said he "wasn't going down for this" by himself. Flemon testified that he observed Appellant making stabbing motions in the front yard. Martin stated that he saw

Appellant standing or sitting beside the victim and he knew something terrible had just occurred. In fact, the testimonies of Martin and Flemon were largely consistent. Based on this evidence, the jury could have reasonably concluded that Appellant was the perpetrator of the assault against Curl. Consequently, the evidence is sufficient to support the jury's finding of guilt.

Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered December 20, 2012.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 20, 2012**

**NO. 12-12-00118-CR**

**JAMARIOS LECHRISTOPHER CANTON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 145th Judicial District Court

of Nacogdoches County, Texas. (Tr.Ct.No. F1017409)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*