Michael Louis MILES, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–84–00057–CR.

Court of Appeals of Texas,
El Paso.

March 13, 1985.

Carl H. Green, J. Scott Howard, Grambling & Mounce, El Paso, for appellant.

Steve Simmons, Dist. Atty., El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and OSBORN and SCHULTE, JJ.

## OPINION

SCHULTE, Justice.

This is an appeal from a conviction for murder. Appellant pled guilty to the court and punishment was assessed at thirty-five years imprisonment. We affirm.

■■■ Appellant was accused of the fatal stabbing of his mother, Glenda Miles, on October 8, 1982. Ground of Error No. Fourteen contends that he was denied his constitutional and statutory rights to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); Tex.Code Crim.Pro.Ann. art 32A.02 (Vernon Pamphlet Supp.1985). This action commenced with Appellant's arrest on October 8, 1982. An indictment was returned on November 19 and the State announced ready on November 22. This established a prima facie showing of compliance with the Speedy Trial Act. *Barfield v. State*, 586 S.W.2d 538 (Tex.Crim.App.1979). The record fails to rebut that announcement or demonstrate any later violation of the provisions of the act. Appellant's pretrial/arraignment was set three times and ultimately waived on January 14, 1983. On that same date, Appellant requested a presentencing investigation (ultimately completed August 15, 1983). On January 26, he requested psychiatric evaluation for purposes of determining both sanity at the time of the offense and competency to stand trial. Psychiatric testing was completed on or about April 18, 1983. A competency trial was specially set for July 25. A jury verdict of competency was entered on July 28. On August 4, the court specially set the case for trial on the merits on

November 14. Appellant entered his plea of guilty on November 15. No continuances or other forms of delay on the part of the State appear in the record. No evidence was presented to rebut the State's assertion of readiness. Ground of Error No. Fourteen is without merit and is overruled.

The remaining fourteen grounds of error challenge the propriety of the guilty plea proceeding by focusing on the ramifications of Appellant's asserted mental incompetency. For ease of analysis, they may be divided into and discussed in three categories: a) those dealing with the proceedings prior to November 14, 1983; b) those dealing with the court's decision to accept the plea; c) those dealing with the conduct of the plea proceeding.

### PRE–NOVEMBER 14 PROCEEDINGS

In Ground of Error No. Twelve, Appellant contends that the court erred in permitting, over objection, the testimony of Dr. Dale Johnson at the July, 1983 competency hearing. Appellant asserts that he was not advised that he would be evaluated by Johnson, did not request or consent to such evaluation and did not waive the privilege afforded by former Tex.Rev.Civ.Stat. Ann. art. 5561h, as it was in effect prior to September 1, 1983. In its present form, Article 5561h includes in its exception to confidentiality use during criminal court proceedings where the patient is victim, witness or defendant. Tex.Rev.Civ.Stat. Ann. art. 5561h, sec. 4(a)(5)(Vernon Supp. 1985). This exception became effective subsequent to Appellant's competency evaluations and hearing. Nonetheless, the introduction of Dr. Johnson's testimony was proper under the prior form of the act.

Appellant moved the court for psychiatric evaluation on January 26, 1983. He specifically requested examination by Dr. V. Jack Butler, psychiatrist, and Dr. Boris Kaim, neurologist. Dr. Kaim had previously served as a consulting physician with regard to two 1976 administrations of electroencephalogram tests on the Appellant.

The court did appoint Dr. Kaim in accordance with Appellant's request. For reasons not disclosed in the record, on February 11, 1983, the court appointed psychiatrist Dr. David Briones, in lieu of Dr. Butler, to conduct a psychiatric examination. On that same date, Appellant's written waiver of confidentiality, under Article 5561h, sec. 4(a)(2) was filed with the court. No objection was raised to the substitution of Briones for Butler. On March 1, 1983, the court ordered psychological testing of the Appellant at 423 Executive Center, El Paso, under the umbrella of Dr. Briones' psychiatric evaluation appointment.

■ The testimony of both Briones and Johnson reveals that Briones is the head of the Texas Tech School of Medicine Psychiatric Department and the Psychiatric Department of Thomason General Hospital in El Paso. Johnson is the chief psychologist working under Dr. Briones in both contexts. Briones defers all psychological testing necessitated by his psychiatric evaluations to the psychologists, particularly Dr. Johnson. Such testing is generally conducted at the outpatient facility at Executive Center. This same procedure was followed in this case. Dr. Briones' court-ordered evaluation necessitated psychological testing. This was conducted by technicians at the outpatient facility. The test results were evaluated by Dr. Johnson, who reported his findings to his supervisor, Dr. Briones. Johnson did not personally interview the Appellant. Johnson's evaluation was integrated into Briones' evaluation and testimony. Consequently, Dr. Johnson's involvement was merely a component of Dr. Briones' evaluation and was covered by the same waiver of confidentiality. The testimony was admissible under Article 5561h, sec. 2(c) and 4(a)(2). Ground of Error No. Twelve is overruled.

■ In Ground of Error No. Eleven, Appellant contends that the evidence was insufficient to support the jury verdict of competency. We disagree. Appellant presented lay witnesses, including Appellant's father, sister, minister and investigating police officers. The testimony disclosed that Appellant sustained a head injury when he fell at the age of five. He began to experience recurrent seizures when he was approximately nine years old. EEG tests were performed, epilepsy was suspected and anti-convulsant medication was prescribed. At age fourteen, Appellant began to exhibit behavioral problems at school and home. He also began to use alcohol and marihuana. Substance abuse increased until it was apparently terminated in October, 1981. In 1978, Appellant sustained a second head injury when he was the driver of a car involved in a collision. A third head injury occurred when he was involved in a fight outside a bar in 1979. Appellant's family members testified that he began to noticeably withdraw in late 1981. His seizures continued. He began an intense reading and self-education program at home. By June, 1982, he was almost totally uncommunicative with his family. The offense occurred on October 8, 1982. Appellant attacked his brother with a knife. His parents intervened. Both were injured, the mother fatally.

The State presented the testimony of Dr. Boris Kaim, Dr. Dale Johnson and Dr. David Briones. As previously noted, Kaim had served as a consulting physician with regard to Appellant's medical condition in 1976. Kaim obtained the Appellant's prior medical records from Appellant's regular physician, Dr. Rathbun. He reviewed the two 1976 EEG test results. He ascertained the facts of the offense from Appellant's father. He conducted a neurological examination and two more EEG tests. He was also familiar with the results of two EEG's administered at Thomason General Hospital shortly after the offense. The first EEG in May, 1976, demonstrated slow brain activity. The second, in November, 1976, was normal. The two conducted at Thomason General Hospital were normal, as were the two carried out after Kaim's court appointment. For the last test, in April, 1983, Kaim wished to use nasal electrodes. Appellant refused to submit without his attorney being present. Kaim testified that the abnormality seen in the May,

1976, EEG was not of a type associated with psychomotor epilepsy. The neurological examination also failed to disclose any brain damage. Kaim also stated that in conversing with him, the Appellant was able to relate details of the offense and asserted a clear recollection of the incident.

Dr. Johnson evaluated the results of psychological testing conducted on April 14, 1983. He found no evidence of mental disease or defect. Appellant's full scale IQ was 96, slightly below the average of 100. Johnson testified that Appellant could probably perform at a level ten to fifteen points higher. This prediction was consistent with prior IQ results described by Appellant's father. Johnson interpreted the results of the Minnesota Multiphasic Personality Index as indicating hostility, immaturity, impulsivity and a tendency to rebel. The sum total of the psychological tests indicated some emotional disturbance but not rising to a level of incompetence. There were no indications of physical brain defect. In Johnson's opinion, Appellant was competent to stand trial.

At the time of his testimony, Dr. Briones had had access to all of the material previously described. He conducted two psychiatric examinations of the Appellant on February 24, 1983, and March 3, 1983. He also interviewed family members, consulted with other physicians and was aware of the facts of the offense. Briones testified that there was a possibility that Appellant suffered from psychomotor epilepsy, but that if so, it was mild and infrequent. The EEG test results had been consistently normal. He recommended anticonvulsant treatment as a precautionary measure. In his interviews with the Appellant, the latter did not indicate any amnesia. He declined to discuss the details of the offense. Briones concluded that Appellant suffers from major, complex psychiatric problems, exacerbated by alcohol and marihuana abuse. Despite a need for further psychiatric treatment, he concluded that Appellant was competent to stand trial. The details of the offense and Appellant's conduct at that time, as provided by other sources, were in Briones' opinion inconsistent with psycho-motor epilepsy. If he were suffering from psychomotor epilepsy, he would only be incompetent while in the throes of a seizure, which generally last from a few minutes to a few hours.

The expert testimony offered by the State encompassed all of the foundation material urged by the Appellant at the competency hearing, prior to the plea, and now on appeal. Kaim found no neurological evidence of brain dysfunction and testified that Appellant was able to recall and relate some details of the offense. His diagnosis was consistent with those of Johnson and Briones, both of whom acknowledged Appellant's psychological problems but concluded that he was competent. There was ample evidence to support the jury's verdict of competency as of July 28, 1983. Ground of Error No. Eleven is overruled.

## THE DECISION TO ACCEPT THE PLEA

Appellant has presented five grounds of error with regard to the trial court's decision to accept his guilty plea. In Ground of Error No. Four, he contends that he was not competent to testify in response to the court's admonitions and inquiries into competence. Ground of Error No. Five asserts that the court erred in accepting a plea of guilty since it was apparent that Appellant was not competent. Grounds of Error Nos. Eight and Nine complain of the court's failure to grant a second competency hearing in lieu of accepting the guilty plea. Ground of Error No. Ten alleges that Appellant was denied due process of law, a fair trial and effective assistance of counsel by the court's refusal to provide further psychiatric evaluation.

Appellant's case was set for trial on November 14, 1983. Counsel for Appellant advised the court that his client wished to waive trial by jury and enter a plea of guilty. This was against the advice of counsel. Counsel further urged the court to provide further psychiatric evaluation and a second competency hearing. In sup-

port of these requests, counsel testified that throughout his representation of Appellant, the latter had refused to discuss the events surrounding the commission of the offense. He stated that in his opinion, Appellant was not competent to stand trial or enter a guilty plea. Subsequent to the July 28 competency verdict, the trial court did grant a motion for further psychiatric evaluation by Dr. Ben Hill Passmore. Dr. Passmore testified that he had interviewed the Appellant twice since the competency verdict. He had reviewed the above-mentioned medical history and the testimony presented in the competency hearing. Passmore testified that all of this information suggested a strong probability that the Appellant was psychotic at the time of the offense. He could not venture an opinion as to legal sanity. He testified that further examination and testing were necessary and that the evaluations done by the other experts were inadequate to produce a diagnosis with reasonable medical certainty. Upon inquiry as to competency, Passmore testified:

He certainly has a factual understanding. It is very hard to state whether or not he has a rational understanding because he will not only not talk about the incident, but he will not discuss his reason for not talking about the incident.

In essence, Passmore did not testify that in his opinion Appellant was incompetent. As with regard to the sanity issue, he simply stated that further examination was necessary.

It is apparent that a primary concern of Passmore, as well as that of counsel, was Appellant's unwillingness to discuss the events of October 8, 1982. This, coupled with refusal to follow counsel's advice, is at the heart of these five grounds of error.

The same problem was addressed at the competency hearing. Other than in the session with Dr. Kaim, Appellant consistently declined to discuss the offense. The previous experts were aware of this behavior in making their evaluation and the jury was so advised, preparatory to their rendering a verdict. Appellant presented no

evidence of a change or deterioration in his mental condition subsequent to the competency verdict on July 28. Nor was any "new evidence" of incompetency presented. New non-committal expert testimony was offered, but it was not founded upon any new diagnostic evidence.

We recognize that a verdict of either competency or incompetency is not res judicata of that issue. *Ex parte Long,* 558 S.W.2d 894 (Tex.Crim.App.1977); *Almand v. State,* 536 S.W.2d 377 (Tex.Crim.App.1976); *Bledsoe v. State,* 519 S.W.2d 646 (Tex.Crim.App.1975); *Minor v. State,* 624 S.W.2d 702 (Tex.App.—El Paso 1981, PDRR). In *Minor,* this Court stated that the legislature has not seen fit to require a change of condition as a prerequisite to a second hearing. That statement must be read in light of the context of *Minor* in which the trial court had ordered a second competency hearing, not refused one. The standard of review is whether the trial court abused its discretion. In this case, while not res judicata, the jury had determined the Appellant's competency as of July 28. As previously concluded, there was no error in that finding. Under these circumstances, to complain of a denial of a second hearing, Appellant must put forth some evidence of a subsequent change in competency or some "new evidence" in a manner analogous to the newly discovered evidence basis for new trial. Any other procedural and evidentiary framework would effectively block trial on the merits. See also: *O'Neil v. State,* 642 S.W.2d 259, 262 (Tex.App.—Houston [14th Dist.] 1982, no pet.). Appellant presented no such evidence prior to the plea. Grounds of Error Nos. Eight, Nine and Ten are overruled.

In addition to the testimony of counsel and Dr. Passmore, Appellant now asserts that it was apparent from his own demeanor in the plea proceeding that he was not competent. In accordance with Tex.Code Crim.Pro.Ann. art. 26.13(b)(Vernon Supp. 1985), the court heard the foregoing testimony and made its own competency inquiry of the Appellant. While Appellant's responses were primarily "yes" or "no,"

there is nothing in the record to demonstrate bizarre, inappropriate or incompetent behavior. Appellant responded normally to questions from the defense counsel, the prosecutor and the court. He acknowledged counsel's advice to pursue a plea of insanity as well as the possibility of a lesser included offense charge to the jury. He was aware of the potential for a jury grant of probation. He was aware that his pursuit of a guilty plea was against the advice of counsel. He responded appropriately to admonishment as to the range of punishment and the absence of a punishment recommendation by the State.

On appeal, the brief points to two responses as indicative of incompetence. The court couched a question in the negative:

THE COURT: And there is no delusive or persuasive hope of pardon that prompts you to confess your guilt in this matter, is this true?

DEFENDANT MILES: No, sir.

THE COURT: It is true, or is not true? There is no delusive or persuasive hope of pardon that prompts you to confess your guilt, is this correct, sir?

DEFENDANT MILES: Yes, sir.

The confusion arises from the question not the answer—*no*, there is not, or *yes*, it is true there is not. Such a response to a negative question is common and hardly indicative of incompetence.

■ Secondly, in response to the prosecutor's question concerning any promises of leniency, Appellant stated, "[t]here was a plea bargain mentioned to me." Appellant was referring to the pre-plea recommendation of the Adult Probation Department. Appellant acknowledged that as the source, and the difference between that and a prosecution recommendation was subsequently clarified. After which Appellant stated:

Yes. And the District Attorney's Office also was supposed to have agreed with the recommendation the Probation Department proposed to the court.

Appellant was then advised of the absence of a State recommendation in this case. Appellant was able to follow the question and express his understanding. The initial confusion over the Probation Department recommendation and an acceptance of that recommendation by the State as a plea bargain is not uncommon and does not indicate incompetence. The plea proceeding record is devoid of evidence of Appellant's incompetence to testify or enter a plea of guilty. Grounds of Error Nos. Four and Five are overruled.

## CONDUCT OF THE PLEA PROCEEDING

Grounds of Error Nos. One, Two and Three assert that Appellant was not represented by counsel at the plea, that he was not advised of the dangers of self-representation in accordance with *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and that he was denied effective assistance of counsel due to his incompetence (inability to assist counsel). Counsel contends that when the court refused to order either further psychiatric evaluation or a second competency hearing and refused to permit counsel to withdraw, he declined to participate in the plea proceeding. Hence, the plea was without counsel.

The record does not support the assertion. Counsel's alternative motion to withdraw stated:

In the event that the Court desires to accept or entertain his plea of guilty, we believe that other counsel should be appointed with regard to this matter. We do not want to participate in any plea that he enters because we do not believe he is mentally capable of voluntarily entering such a plea.

■ The record does not affirmatively show "non-participation" by counsel. The court properly referred counsel to the State Bar of Texas, Ethical Considerations on Code of Professional Responsibility EC 7–7 (1972). If counsel's asserted position were correct, we envision the absurd situation in which, following a guilty verdict, an attorney firmly convinced of his client's innocence refuses to participate in the punishment phase. Such a response could not

serve the needs of his client or the legal system. Dissatisfaction with lower court results is to be resolved by appeal, not non-participation.

■ In any event, we do not find this to be an uncounseled plea. Both counsel and Appellant testified that before the plea, Appellant was advised of the defense prospects for trial, the range of punishment and the consequences of a guilty plea. Appellant simply chose to follow a course not recommended by counsel.

■ The absence of counsel's signature on the jury waiver form is not an indication of lack or deprivation of counsel. Neither Article 1.13 (Vernon 1977) or 26.13 (Vernon Supp.1985) of the Code of Criminal Procedure require counsel's signature. Counsel was present throughout the proceeding. He objected to the State's evidentiary summary and asked to be heard on the issue of punishment. Appellant had the assistance of counsel, not to make his decision for him but to advise him of the options and consequences. This is not a case of self-representation as in *Faretta.* Grounds of Error Nos. One, Two and Three are overruled.

■ In Ground of Error No. Six, Appellant contends that the record is insufficient to support four assertions in the judgment. The judgment recites a finding of competency at the time the plea was entered. As discussed above, the evidence was sufficient to support such finding. Similarly, we have found that Appellant was in fact provided assistance of counsel and that counsel was present throughout the plea proceedings. The judgment is accurate in that regard. The judgment is incorrect in stating that counsel and Appellant waived in writing the ten days to prepare for trial provided in Tex.Code Crim. Pro.Ann. art. 26.04(b)(Vernon 1966). This indigent Appellant and counsel were provided slightly over three months notice of the trial setting. No waiver was necessary. The judgment may be reformed to reflect the actual sequence of events.

■ The record does not disclose a formal inquiry and announcement of ready.

That is not an express requirement of the Code of Criminal Procedure. In any event, it is an established concept that trial may not proceed in the face of a justifiable assertion of unreadiness. Here, the Appellant was apparently ready to proceed with his guilty plea. Counsel contended that he was not ready, but the only basis therefor was the continued assertion of incompetence which we have found to be without merit. We can perceive no harm in the failure of the record to demonstrate a formal announcement of ready. Ground of Error No. Six is sustained only to the extent of reforming the judgment to reflect that ten days notice of trial was provided and deleting the reference to a written waiver of such notice.

■ In Ground of Error No. Seven, Appellant contends that he was denied his statutory and constitutional right of allocution prior to sentence. *Green v. United States,* 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961); Tex.Code Crim.Pro. Ann. art. 42.07 (Vernon Supp.1985). When the State rested, the court inquired if Appellant had anything to say on his behalf. Appellant and counsel both responded negatively. The court accepted the plea, found Appellant guilty and assessed punishment at thirty-five years imprisonment. Counsel stated:

MR. GREEN: Your honor, with regard to punishment, I didn't know the Court was going to assess punishment at this time. We would have some evidence on the punishment portion, if we are permitted to present that.

THE COURT: Mr. Green, the Court asked you if you had any evidence to offer at that time, sir.

MR. GREEN: I thought you were speaking in terms of the guilty plea itself, not in terms of sentencing.

THE COURT: Well, we will call a recess.

Appellant's complaint is restricted to a denial of his right of allocution. That right is restricted by Article 42.07 to three enumerated issues, of which Appellant presently focuses on the second, competency. Appel-

lant's contention is without merit. An objection to denial of allocution is a prerequisite to appellate complaint. *Tenon v. State,* 563 S.W.2d 622 (Tex.Crim.App.1978); *Graham v. State,* 498 S.W.2d 197 (Tex. Crim.App.1973). Appellant's trial objection did not refer to allocution rights but to his desire to present evidence on punishment. That does not comport with the appellate ground of error. In fact, the statement of facts does not disclose the ultimate result of the actual trial court objection. The court did not expressly rule on it, and the last statement in the record is the court's announcement of a recess, not an adjournment. In any event, the trial objection is not raised on appeal, and the actual appellate complaint is without trial foundation. Appellant seeks to distinguish Tenon by asserting that competency under Article 42.07(2) had clearly been placed in issue in the case. It had, but not in the context of Article 42.07. The objection to terminating the proceeding made no reference to competency. Furthermore, our disposition of the other grounds of error found no error in the trial court's handling of the competency issue. There is no evidence of a change in competency between the decision to accept the plea and the sentencing which followed immediately. Ground of Error No. Seven is overruled.

In Grounds of Error Nos. Thirteen and Fifteen, Appellant asserts that the court erred in denying his motion to dismiss due to pretrial publicity and a newspaper interview given by the prosecutor. A jury was waived; the plea was entered before the trial court. A trial judge, in the absence of record proof to the contrary, is presumed to disregard improper evidence or extraneous material. Counsel invites us to speculate that the pretrial publicity unduly influenced his client to plead guilty. Even if that were a valid basis for reversing a guilty plea, such influence is nowhere suggested in the record. Grounds of Error Nos. Thirteen and Fifteen are overruled.

The judgment is reformed to delete the reference to a waiver of ten days notice of trial and substituting therefor a recitation that ten days notice of trial had been pro-

vided Appellant and counsel. As reformed, the judgment is affirmed.