

**NUMBER 13-12-00635-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**JOSE GUILLEN JR.,**                **Appellant,**

**v.**

**THE STATE OF TEXAS,**                **Appellee.**

---

**On appeal from the 319th District Court
of Nueces County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez**

Appellant, Jose Guillen Jr., was convicted of one count of murder and five counts of aggravated assault. *See* TEX. PENAL CODE ANN. §§ 19.02(b), 22.02(a) (West 2011). By five issues, appellant contends that the evidence is legally and factually insufficient to support the verdict, he received ineffective assistance of counsel, his due process rights were violated, and his "right to proper determination of his incompetence to stand trial

was violated when the trial court failed to follow the mandatory procedure of [the Texas Code of Criminal Procedure] Chapter 46B, once evidence suggest[ing] that [he] was incompetent to stand trial came to the trial court's attention." *See* TEX. CODE CRIM. PROC. ANN. art. 46B (West 2011). We affirm.

## I. BACKGROUND

Jonathan Hamilton testified that on March 31, 2010, he was at his neighbor, Brenda Smith's house, when a man named "Kenneth" "made a Mexican joke" and Hamilton "giggled about it." Hamilton stated that when he "started going back to [his] trailer," he saw that appellant was standing behind him with something behind his back. According to Hamilton, appellant told him, "You no like me? You no like me," and Hamilton replied, "Man, get out of my face. I don't even know you." Hamilton stated that appellant then asked, "You no like Mexicans? You no like Mexicans," and Hamilton responded, "Dude, get out of my face." Hamilton testified that he turned around and appellant hit him with a barbecue fork. Hamilton stated that after reflecting on the event, he approached appellant and asked, "Why you try to stab me with a barbeque fork," and appellant "spit in [Hamilton's] face and punched [him] and then" the men began "fighting." Hamilton testified that appellant's girlfriend, Lanae Wesner, asked Hamilton to stop fighting with appellant, and Hamilton stopped fighting, helped appellant up, the men shook hands, and Hamilton told appellant he had to leave. When asked, "Who got the worse of [the] fight," Hamilton replied, "He did." Appellant then left, and Hamilton went home to change.

Hamilton went back to Smith's house and he sat with Smith, "Cindy," and Lanae around the barbeque pit drinking beer. Hamilton explained what happened next as follows:

> So, I had—was getting ready to go in, and I turned around, and I was drinking the last drink out of my beer, when all of a sudden I hard [sic] a real loud pop and my ahead [sic] started vibrating, and, uh,—(sighing)—and then I remember, it took me—I'm trying to figure out what had just happened, 'cause I don't—I have no idea what has happened. And I'm looking and I could see, you know, meat and stuff hanging out of my face, right here. And I—could feel stuff in my mouth. And then I spit, then I could see my teeth, then, all of a sudden, I—I see flash, and then I—I was like, "Shit. I've been shot."
>
> So I—so I was taking off running, and then he started unloading some more. And he was—and then,—yeah, he just kept—and I just took off running. And I ran to the Fin & Feather and was beating on the door trying to get somebody to call 9-1-1 for me. And then, that's when I met up with my partner[, James Calhoun]. He had ran [sic] over there, too, and he called 9-1-1.

When asked during the trial, Hamilton stated that he was aware at that point that others had been shot also because he had seen "a few people fall." Hamilton testified that appellant was the person who shot him and that he saw appellant "shootin' everybody." According to Hamilton, appellant was the only person who had any reason to shoot him because he did not have any enemies.

Smith testified that after Hamilton fought with appellant, appellant left her house. According to Smith, she saw appellant return to her house approximately twenty or thirty minutes later and "come up around the back of the trailer." Smith stated that she saw appellant shoot Lanae from behind, and that appellant then shot Smith. When asked if she was "absolutely sure" that appellant had shot her and Lanae, Smith replied, "Oh, yes. Absolutely." Smith explained that she was seated facing Lanae at the time that she was shot. Smith stated that appellant shot her "through [her] liver" and that there "was a lot of

3

blood." Smith passed out and was unconscious in the hospital for two months. The prosecutor asked, "Is there any doubt in your mind that [appellant] was the shooter," and Smith said, "No."

Calhoun testified that after the fight between appellant and Hamilton, appellant left and then returned to Smith's house. Calhoun stated that he saw appellant shoot Hamilton. Calhoun did not see appellant shoot anyone else because he ran from the area. Calhoun was also shot and stated he assumed it was from the ricochet of a bullet. Calhoun testified that after running to the "Fin & Feather", he observed appellant running with the gun in his hand from the trailers to the street. Calhoun stated that when he called 9-1-1, he told the officer that appellant was the shooter.

The State presented evidence that after the shooting, appellant took a taxi to the Corpus Christi airport and told the driver that he was going to California. Evidence was presented that on April 1, 2010, the day after the shooting, Officer Rich Baker arrested appellant while appellant was switching airplanes at the Houston Hobby Airport. According to Officer Baker, appellant had flown to Houston from Corpus Christi. Officer Baker testified that appellant was "wearing camouflage clothing. A camouflage shirt and camouflage pants or long, baggy shorts." The State presented evidence that gunpowder residue had been detected on appellant's camouflage shorts.

The jury found appellant guilty of murder and five counts of aggravated assault. Appellant was sentenced to life imprisonment for the murder and concurrent sentences of twenty years' confinement for each count of aggravated assault. This appeal followed.

4

## II.    SUFFICIENCY OF THE EVIDENCE

By his first and second issue, appellant contends that the evidence is legally and factually insufficient to support his conviction of murder.[1]  Specifically, appellant argues that "[f]iring into a crowd of people without any additional evidence that there was a specific person who was the known or intended victim of death or serious bodily injury cannot support the verdict of guilty [beyond a reasonable doubt]."[2]

### A.    Standard of Review and Applicable Law

Appellant contends by his second issue that the evidence is factually insufficient for the reason stated above.  However, the court of criminal appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."  *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, we review appellant's claims of evidentiary sufficiency under "a rigorous and proper application" of the *Jackson* standard of review.  *Id.* at 906–07, 912.  Moreover, we do not refer separately to legal or factual sufficiency and will only analyze appellant's issues under the *Jackson* standard.  *See id.* at 985.

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

---

[1] Appellant does not challenge the sufficiency of the evidence regarding the aggravated assault convictions.

[2] We construe appellant's issue as challenging the mens rea required for the offense of murder.

5

found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Brooks*, 323 S.W.3d at 898–99 (explaining that in the *Jackson* standard we consider "all of the evidence in the light most favorable to the verdict," and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt). "[T]he fact[-]finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ("The jury, in all cases is the exclusive judge of facts proved and the weight to be given to the testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A person commits the offense of murder if he intentionally or knowingly causes the death of another individual. TEX. PENAL CODE ANN. § 19.02(b)(1). A person acts intentionally if it is his "conscious objective or desire" to engage in the prohibited conduct or cause the prohibited result. TEX. PENAL CODE ANN. § 6.03(a) (West 2011). A person acts knowingly if he acts with awareness of the nature of his conduct or that the conduct is "reasonably certain to cause the prohibited result." *Id.* § 6.03(b).

6

**B.     Analysis**

In this case, evidence was presented that appellant stood behind Lanae and shot her in the back of the head.  From this evidence, the jury could have believed that appellant targeted Lanae and inferred that appellant intended to kill Lanae or at least knew that shooting her in the back of the head was "reasonably certain" to cause her death.    *See id.*; *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986) ("If a deadly weapon is used in deadly manner, the inference is almost conclusive that he intended to kill; on the other hand, if the weapon was not a dangerous one, or was not used in a deadly manner, the evidence must be established by other facts.") (quoting *Hatton v. State*, 31 Tex. Crim. 586, 21 S.W. 679 (Tex. Crim. App. 1893)); *Flanagan v. State*, 675 S.W.2d 734, 737 (Tex. Crim. App. 1984) (explaining that specific intent can be inferred from the use of a deadly weapon).  Thus, after viewing the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found beyond a reasonable doubt that appellant had the requisite mens rea to kill Lanae. *See Jackson*, 443 U.S. at 319; *see also Brooks*, 323 S.W.3d at 898–99.  Having found the evidence sufficient to support appellant's conviction of murder, we overrule appellant's first and second issues.

### III.     INEFFECTIVE ASSISTANCE OF COUNSEL

By his third issue, appellant contends that his attorneys were ineffective because they:  "(1) admitted they were ineffective; (2) failed to put on any closing argument; [and] (3) failed to object to the prosecutors inadmissible closing argument."

7

**A.    Standard of Review and Applicable Law**

Ineffective assistance of counsel claims are evaluated under the two-part test articulated by the Supreme Court in *Strickland v. Washington*. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The *Strickland* test requires the appellant to show that counsel's performance was deficient, or in other words, that counsel's assistance fell below an objective standard of reasonableness. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 687. The appellant must then show that there is a reasonable probability that, but for counsel's errors, the result would have been different. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694. In determining the validity of appellant's claim of ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813.

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate . . . ."). Counsel's effectiveness is judged by

8

the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851. An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 (setting out that "in the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*"); *see Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994) (en banc) (stating that "we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment" and that "[d]ue to the lack of evidence in the record concerning trial counsel's reasons" for the alleged ineffectiveness, the court was "unable to conclude that appellant's trial counsel's performance was deficient") (internal quotations omitted).

## B.    Discussion

First, appellant claims that his trial attorneys informed the trial court that "in their opinion, they were not and could not be effective assistance to [appellant] in preparing for trial" because "they were unable to effectively communicate with [appellant] and were being forced to substitute their own judgment for [appellant] on matters specifically reserved for a defendant's determination." Appellant claims that his attorneys stated that they could not communicate with him regarding his right to testify and his right to accept a plea bargain.

Appellant cites a motion to withdraw as attorney of record filed by Eric Flores, one of appellant's trial attorneys, requesting to withdraw from representing appellant because

9

"Defense counsel believes it is essential to be able to communicate effectively with defendant in order to adequately represent the client's interest. Despite the verdict of the jury finding the defendant competent, defense counsel still maintains that he is unable to effectively represent client due to this lack of communication." The motion sets out that appellant had been found competent to stand trial and that there was a failure of effective communication. However, there is nothing in the record to support a conclusion that this failure of communication was caused by appellant's attorneys. In order to find that appellant's attorneys were ineffective, we must be able to determine that the attorneys' performance was deficient.

Appellant cites no authority and we find none allowing this Court to conclude that trial counsel rendered ineffective assistance because the defendant refused to communicate with trial counsel. At the motion to withdraw hearing, appellant's trial counsel stated that he had attempted to communicate with appellant but that appellant had not assisted him or informed him "in any way on what he want[ed] to do in his own defense." Appellant's other trial counsel stated that he had attempted to discuss a plea bargain with appellant but that trial counsel did not "know if [appellant] fully" understood what had been discussed. Thus, the record reflects that appellant's attorneys attempted to communicate with appellant, but for whatever reasons, appellant refused to cooperate.[3]

The case law cited by the State and the case law we have found supports a conclusion that a defendant's choice to not communicate with trial counsel does not amount to ineffective assistance of counsel. *See Cannon v. State*, 668 S.W.2d 401, 403

---

[3] The trial court denied Flores's motion to withdraw and a motion for continuance filed by appellant's other trial attorney, Robert James Flynn, on the basis that a jury had found that appellant was competent to stand trial.

10

(Tex. Crim. App. 1984) (refusing to conclude that the defendant's trial counsel was ineffective when the defendant failed to give sufficient information to permit trial counsel to determine the identity of supposedly key witnesses); *Rodriguez v. State*, 74 S.W.3d 563, 569–70 (Tex. App.—Amarillo 2002, pet. ref'd) (finding that because the defendant withheld information contained in a PSI from counsel, the trial counsel's failure to move for a continuance upon discovering this new information was not ineffective assistance); *Hernandez v. State*, 885 S.W.2d 597, 601 (Tex. App.—El Paso 1994, no pet.) (recognizing that the defendant's own failure to assist her attorney and psychiatrist by providing information relevant to an insanity defense prior to the entry of her guilty plea defeated a later claim of ineffective assistance). Concluding otherwise would allow the defendant to benefit from his own failure to communicate with his trial counsel. *See Rodriguez*, 74 S.W.3d at 570.

Next appellant argues that his trial attorneys were ineffective because they chose not to present any closing argument at the guilt/innocence stage of his trial. However, at the punishment phase of trial, appellant's trial counsel explained that the reason that he did not present a closing argument was due to his trial strategy. Appellant's trial counsel stated:

> This is the punishment phase, and as you can kind of tell from the end of the last—when we first got up here and told you what this case is about, we never disputed the fact that [appellant] committed the act. That's why you didn't hear from us during the guilt-innocence [stage], during the closing arguments. But this is where you are going to hear from us because this is what it's about, it's the punishment trial. . . . And that's really the important thing because it's no question my client did the act. But the big question is why my client committed the act. And that's what we want you to take notice of when you listen to the evidence. Because what you've heard and we want you to factor in is the fact that our client did suffer from a head injury. He did suffer from a large amount of loss of blood, and the

fact that alcohol was involved. And those are facts for you to consider in punishment.

As previously stated, when we determine the validity of appellant's claim of ineffective assistance of counsel, our review "must be highly deferential to trial counsel and avoid the deleterious effects of hindsight," *Thompson*, 9 S.W.3d at 813, and we will not second-guess legitimate tactical decisions made by trial counsel. *Morales*, 253 S.W.3d at 696. Here, appellant's trial attorney stated on the record that he made a strategic decision not to make a closing argument and explained his reasons for making that choice. Appellant cites no authority, and we find none, establishing that an attorney's performance is deficient per se if he fails to make a closing argument.

Moreover, in *Florida v. Nixon*, the United States Supreme Court recognized, in the context of a capital murder case, that it may be reasonable for trial counsel to concede the defendant's guilt in the face of overwhelming evidence during the guilt/innocence stage of trial in order to maintain the attorney's credibility during the punishment stage of the trial. *Florida v. Nixon*, 543 U.S. 175, 192 (2004) (holding that concession of guilt as part of strategy in capital case where guilt was clear can be reasonable strategic choice). Here, the attorneys in appellant's case were faced with a witness who saw appellant shoot Lanae in the back of the head. The attorneys made a strategic decision not to make a closing argument because they determined it would not benefit appellant to argue that he did not commit the crime given the above-stated evidence.[4] Therefore, we cannot conclude that appellant's attorneys' performance was deficient in this case. We further

---

[4] We note that appellant's attorneys did not concede appellant's guilt during the guilt/innocence stage of the trial, but instead argued in their opening statement that appellant lacked the requisite mens rea for murder.

12

conclude that appellant has not met his burden of showing that the outcome would have been any different if his trial attorneys had decided to make a closing argument given that Smith testified that she saw appellant shoot Lanae in the back of the head and other witnesses stated that appellant shot them. *See Thompson*, 9 S.W.3d at 812; *see also Strickland*, 466 U.S. at 694. We overrule appellant's third issue.[5]

## IV. EVIDENCE OF INCOMPETENCY AND PROPER PROCEDURE

By his fourth and fifth issues, which we address together, appellant contends that his right to due process was violated when the trial court "failed to hold a hearing once evidence sufficient to raise a bona fide doubt as to [his] competence to stand trial became evident," and his "right to a proper determination of his incompetence to stand trial was violated when the trial court failed to follow the mandatory procedures of" chapter 46B of the Texas Code of Criminal Procedure once evidence suggesting his incompetence to stand trial was brought to the trial court's attention.[6]

## A. Applicable Law

We review the trial court's decision regarding a competence decision under an abuse of discretion standard of review. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). A defendant's competence to stand trial is presumed, and the defendant shall be found competent to stand trial unless it is proven by a preponderance of the evidence that the defendant is incompetent. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (West 2006). A defendant is competent to stand trial if he has a "sufficient present ability

---

[5] Although appellant stated in his issues presented that his trial attorneys were ineffective due to their alleged failure to object to the prosecutor's inadmissible closing argument, appellant has not included a section in his brief addressing this allegation. Thus, we do not address it. *See* TEX. R. APP. P. 38.1(i).

[6] Appellant has briefed his fourth and fifth issues together.

to consult with his lawyer with a reasonable degree of rational understanding" or a "rational as well as factual understanding of the proceedings against him." *Id.* art. 46B.003. "A person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial." *McDaniel v. State*, 98 S.W.3d 704, 709 (Tex. Crim. App. 2003) (quoting *Drope v. Mississippi*, 420 U.S. 162, 171 (1975)).

If evidence suggesting the defendant's incompetence to stand trial is presented to the trial court, the trial court must conduct an informal inquiry into the defendant's competency. TEX. CODE CRIM. PROC. ANN. art. 46B.004(c) (West Supp. 2013). "A suggestion of incompetency is the threshold requirement for an informal inquiry under Subsection (c) and may consist solely of a representation from any credible source that the defendant may be incompetent."[7] *Id.* art. 46B.004(c-1). "If after an informal inquiry the court determines that evidence exists to support a finding of incompetency, the court shall order an examination under Subchapter B to determine whether the defendant is incompetent to stand trial in a criminal case."[8] *Id.* art. 46B.005(a) (West 2006).

---

[7] No evidence is required, and the trial court need not form a bona fide doubt concerning the defendant's competency. TEX. CODE CRIM. PROC. ANN. art. 46B.004(c–1) (West Supp. 2013).

[8] Article 46B.021 states, among other things, the following:

(a) On a suggestion that the defendant may be incompetent to stand trial, the court may appoint one or more disinterested experts to:

(1) examine the defendant and report to the court on the competency or incompetency of the defendant; and

(2) testify as to the issue of competency or incompetency of the defendant at any trial or hearing involving that issue.

(b) On a determination that evidence exists to support a finding of incompetency to stand trial, the court shall appoint one or more experts to perform the duties described by

"The trial court shall hold a trial under Subchapter C before determining whether the defendant is incompetent to stand trial on the merits." *Id.* art 46B.005(b). "If a court holds a trial to determine whether the defendant is incompetent to stand trial, on the request of either party or the motion of the court, a jury shall make the determination." *Id.* art. 46B.051 (West 2006). The trial court shall continue the trial on the merits once a jury determines that the defendant is competent to stand trial. *Id.* art. 46B.053 (West 2006). "Should the formal competency trial result in a finding of competency, the trial court is not obliged to revisit the issue later absent a material change of circumstances suggesting that the defendant's mental status has deteriorated." *Turner v. State*, No. AP–76580, __ S.W.3d __, 2013 WL 5808250, at *10 (Tex. Crim. App. Oct. 30, 2013); *Learning v. State*, 227 S.W.3d 245, 250 (Tex. App.—San Antonio 2007, no pet.); *Clark v. State*, 47 S.W.3d 211, 218 (Tex. App.—Beaumont 2001, no pet.); *Miles v. State*, 688 S.W.2d 219, 224 (Tex. App.—El Paso 1985, pet. ref'd).

## B. Pertinent Facts

---

Subsection (a).

(c) An expert involved in the treatment of the defendant may not be appointed to examine the defendant under this article.

(d) The movant or other party as directed by the court shall provide to experts appointed under this article information relevant to a determination of the defendant's competency, including copies of the indictment or information, any supporting documents used to establish probable cause in the case, and previous mental health evaluation and treatment records.

(e) The court may appoint as experts under this chapter qualified psychiatrists or psychologists employed by the local mental health authority or local mental retardation authority. The local mental health authority or local mental retardation authority is entitled to compensation and reimbursement as provided by Article 46B.027.

(f) If a defendant wishes to be examined by an expert of the defendant's own choice, the court on timely request shall provide the expert with reasonable opportunity to examine the defendant.

*Id.* art. 46B.021 (West 2006).

15

On March 9, 2011, appellant's trial attorney filed a motion suggesting incompetency and requesting an examination. The trial court signed an order finding appellant incompetent to stand trial on the basis of Dr. Troy Martinez's report on March 11, 2011. The trial court ordered appellant committed to North Texas State Hospital. After 120 days of initial commitment, North Texas State Hospital informed the trial court that as of August 31, 2011, pursuant to a medical evaluation, appellant was still incompetent. On September 13, 2011, the trial court extended appellant's commitment. On December 15, 2011, appellant was brought to the trial court on a bench warrant.[9]

Then, on April 23, 2012, appellant's trial attorney filed a motion suggesting incompetency and request for examination. A jury trial was held on whether appellant was incompetent to stand trial on August 6, 2012. The jury found appellant competent to stand trial, and the trial court signed an order of restoration of competency on August 8, 2012.[10]

On August 9, 2012, one of appellant's trial attorneys, Robert Flynn, filed a motion to withdraw as attorney of record on the basis that despite a finding of competence, he was unable to effectively represent appellant due to a lack of communication. On September 19, 2012, Flynn filed a motion for continuance stating that appellant "lack[ed] the present mental capacity to consult with counsel to a rational degree of understanding of the nature of the proceedings against him." Flynn explained that despite the jury's determination of appellant's competence to stand trial, appellant had "continued to regress while confined in the Nueces County Jail, and despite frequent and numerous

---

[9] It is unknown when appellant was released from the hospital.

[10] Appellant does not challenge the jury's finding of competency and there is no reporter's record of that proceeding in the appellate record.

attempts by counsel to explain his current legal situation to him, [appellant] essentially continues to remain non-responsive." Flynn requested "another competency evaluation to determine [appellant's] mental capacity to stand trial." According to appellant, his attorneys suggested his incompetency to stand trial, and pursuant to the code of criminal procedure, the trial court was once again required to conduct an informal inquiry into his competency. TEX. CODE CRIM. PROC. ANN. art. 46B.004(c).

At a pre-trial hearing held on September 21, 2012, Flynn explained to the trial court that he had filed the above-mentioned motions because appellant's trial attorneys "believed" that appellant had regressed and was not competent. The trial court asked, "Is that based on anything different than what the jury had heard," and Flynn replied, "It's essentially the same, Judge, as we're having the same communication issues with" appellant. Appellant's other trial attorney, Flores, stated that the attorneys did not "believe" that appellant understood the plea bargains that the attorneys had discussed with him. The trial court asked, "That's still the same situation, though, is prior to the jury trial, the jury heard?" Flores responded, "It's the same facts, it's just still happening." The trial court said, "Same facts, okay. . . . All right. Then the Court finds that nothing of consequence has changed since the jury back in August found that he was competent to stand trial."[11] The trial court denied the motions and proceeded to appellant's trial on the merits.

## C.    Discussion

---

[11] The State prosecutor explained that appellant's failure to communicate with the attorneys had been presented to the jury and that the jury found appellant competent to stand trial. The prosecutor said, "I don't hear anything new. There's nothing really that's changed between now and the jury's verdict. So I ask the Court to deny the motion[s]."

Once the jury determined that appellant was competent to stand trial, to justify a second competency trial, appellant had the burden of presenting evidence of a change in his mental condition since the first competency trial. *See Learning*, 227 S.W.3d at 250; *Clark*, 47 S.W.3d at 218; *Miles*, 688 S.W.2d at 224 (explaining that although a previous finding of competence is not res judicata, the defendant who has been found competent to stand trial "must put forth some evidence of a subsequent change in competency or some 'new evidence' in a manner analogous to the newly discovered evidence basis for new trial. Any other procedural and evidentiary framework would effectively block trial on the merits."); *O'Neil*, 642 S.W.2d at 262 (holding that the trial court did not abuse its discretion by not impaneling a jury to hold a competency trial because the appellant presented no new evidence showing a change or deterioration in his mental competency during the course of trial after an expert had already determined that the appellant was competent to stand trial). As explained above, the trial court held an informal inquiry into appellant's competency based on appellant's attorney's motion to withdraw and motion for continuance. During this inquiry, the trial court asked appellant's attorneys if there was evidence of "anything different than what the jury had heard." Appellant's attorneys stated that there had not been any change in appellant's behavior and that the jury had already heard evidence of the behavior concerning the attorneys and that based on that evidence had found appellant competent. Moreover, appellant's attorneys informed the trial court that they were basing the incompetency claim on the "same facts" heard by the jury. We cannot conclude that the trial court abused its discretion in not holding a second competency trial because appellant's trial attorneys acknowledged that there had not been a change in appellant's mental condition since the last competency trial and that

18

they were relying on the same facts that the jury heard before determining that appellant was competent to stand trial. *See Moore*, 999 S.W.2d at 393; *Learning*, 227 S.W.3d at 250; *Clark*, 47 S.W.3d at 218; *Miles*, 688 S.W.2d at 224; *O'Neil*, 642 S.W.2d at 262. We also conclude that the trial court followed the proper procedures regarding appellant's competency as set out in article 46B of the code of criminal procedure. We overrule appellant's fourth and fifth issues.

## V.     CONCLUSION

We affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
27th day of February, 2014.